**Barry JOHNSON and Sue Johnson, Plaintiffs–Appellants,**

v.

**JADICO, INC., and Jack Dickerson, Randy Dickerson, Robert Dickerson, and Terry Dickerson, Individuals and General Partners d/b/a Dickerson Building Partnership, Defendants–Respondents.**

No. 26337.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 15, 2005.

John E. Turner, Christopher P. Sweeny, Kansas City, Rick Koenig, Sedalia, for appellants.

Larry James Tyrl, Kansas City, for respondents.

NANCY STEFFEN RAHMEYER, Judge.

Barry Johnson ("Johnson"), an employee of BBI Bachtel Builders, Inc. ("BBI"), was injured when he fell through a skylight in a building owned by Jack Dickerson, Randy Dickerson, Robert Dickerson and Terry Dickerson, Individuals and General Partners d/b/a Dickerson Building Partnership (collectively, "Dickerson"), but leased by Jadico, Inc. ("Jadico"). Jack Dickerson is listed as the General Partner for the landlord in the lease; either Randy Dickerson or Robert Dickerson appears to be listed as the president of Jadico, Inc., on the lease. The written lease provided that Jadico was to "use and occupy the Premises for the purposes of manufacturing, and general office use in connection with the conduct of its business and for no other purposes." The lease granted Jadico the right to "peaceably and quietly have, hold and enjoy the Premises during the Lease term without any manner of hindrance or molestation from Landlord or anyone claiming under Landlord." The lease prohibited Jadico from assigning the lease or "any part of the Premises without the prior written consent of Landlord." Dickerson retained the right to enter the premises to "make such alterations or repairs therein as may be necessary for the safety or preservation thereof," to consent to all alterations to the property, and to make any "alterations ... reasonably requested by Tenant and agreed to by Landlord."

Johnson and his wife (collectively, "the Johnsons") brought a suit based on a premises liability claim for Johnson's injuries. Jadico and Dickerson (collectively, "Defendants") filed a joint motion for summary judgment in which they conceded, for the purposes of the summary judgment motion, every element of the Johnsons' claim for Johnson's injuries under a premises liability theory, except each claimed it had relinquished possession and control of its premises to BBI for the construction project and, therefore, neither was liable. The trial court granted the motion for summary judgment on that basis and the Johnsons appeal. We reverse and remand.

BBI was hired by Dickerson to construct a building on a lot adjacent to the building leased by Jadico. Johnson was injured on the roof of the building leased by Jadico when he fell through a skylight, which he maintains was unguarded and looked almost identical to the rest of the roof. He claimed he did not know of the existence of the skylights, nor did he know that the discolored roof panels were not capable of supporting his weight. Johnson was on the roof of the Jadico building, which Defendants claim was serving as a staging area, for the purpose of unloading materials for the construction of the new building. According to the affidavit of Jack Dickerson, the new building was to

be "connected" to the existing Jadico building. There is no other information in the record concerning the connection between the Jadico building and the new building.

■ The Johnsons claim error in the grant of summary judgment as to both Jadico and Dickerson for the reason that there is a factual dispute as to whether either relinquished possession and control of the premises or, in the alternative, even if Defendants did relinquish control, if, as landowners, they failed to disclose a known dangerous condition that they had reason to believe would not be discovered. We find the first issue dispositive and, therefore, we do not address whether the landowners failed to disclose a known dangerous condition. We find there is an issue of fact as to whether Dickerson or Jadico relinquished possession and control of the premises to BBI.

Because Jadico and Dickerson were granted summary judgment, we review that grant de novo. *ITT Commercial Finance Corp., v. Mid–America Marine Supply, Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The Johnsons, as the non-moving parties, are given the benefit of all reasonable inferences and the record must be viewed in the light most favorable to them. *Id.* at 382. Summary judgments are an extreme and drastic remedy and great care must be used when considering them. *Hammonds v. Jewish Hospital of St. Louis*, 899 S.W.2d 527, 529 (Mo.App. E.D.1995). Additionally, only evidence which would be admissible at trial can be considered in support of a motion for summary judgment. *American Family Mutual Ins. Co., v. Lacy*, 825 S.W.2d 306, 311 (Mo.App. W.D.1991).

Initially, we note that Dickerson and Jadico filed a joint response in this appeal and they address both of the Johnsons' points in one response. The Defendants argue that they relinquished control of both the job site and contractor's activities and are, therefore, not liable. To support that contention, Defendants use the affidavit of Jack Dickerson. In his affidavit, Jack Dickerson states that he is "also an owner and officer in the company known as Jadico, Inc.," but it is not clear how Jack Dickerson's statement affects Jadico's legal liability in that a different person signed the lease as President of Jadico. Defendants ignore the separate corporate status of Jadico [1] and fail to acknowledge the significance of the legal relationship between Dickerson and Jadico, which stems from the lease between Dickerson and Jadico. Jack Dickerson did not allege that Jadico had any contract or business relationship with BBI, nor that BBI did any work to the Jadico existing building. In fact, BBI employees were told not to go into the Jadico warehouse. The legal rights and responsibilities of Dickerson and Jadico are not identical.

Nonetheless, because Defendants support both claims with one affidavit, we shall determine whether that affidavit, as a matter of law, sufficed to support the grant of summary judgment. We look to the summary judgment motion, with the supporting affidavits and pleadings, and the opposing pleading to determine the uncontroverted facts regarding the issue of whether BBI was in possession and control of the premises at the time of the injury.

1. *See Love v. Ben Hicks Chevrolet, Inc.*, 655 S.W.2d 574, 576 (Mo.App. W.D.1983) ("[P]ersons who choose to incorporate may not evade the consequences of doing so merely to suit their individual convenience. The gamut of legal consequences which would flow from permitting stockholders to draw and close the corporate veil at their own whim and caprice literally defies even the most fertile imagination.") (citations omitted).

Jack Dickerson's affidavit states, in pertinent part:

10. On July 18, 2000, BBI Bachtel Builders, Inc. and its employees, were in possession and control of the *roof of the existing building* which they were using as a *staging area for construction* activities.

11. The roof of the existing building BBI Bachtel Builders, Inc. was in possession and control of on July 18, 2000, included the skylight through which Barry Johnson fell.

(emphasis added).

The Johnsons denied both allegations, relying upon the affidavit of Johnson that BBI never took possession and control of the existing building and Jack Dickerson's deposition testimony in which he admits to having no personal knowledge of what the roof was being used for because he was in the office at the time the accident happened. Johnson also proposed as an uncontroverted fact that BBI never took possession and control of the Jadico building. In support of his position, Johnson relied upon his own affidavit stating BBI did not take possession and control of the building. Defendants claimed Johnson's affidavit was insufficient because it was a "legal conclusion." We agree. We find that neither affidavit supports a finding regarding the possession and control of the premises.

The affidavit of Jack Dickerson and the Defendants' theory are prefaced on a claim that the *roof* of the Jadico building was in the possession and control of BBI. In fact, in Defendants' reply arguments in support of their Motion for Summary Judgment to the trial court, Defendants stated,

There is no dispute and defendants have never contended that the entire warehouse owned by Dickerson and occupied by Jadico was in the possession and control of plaintiff's employer. Throughout the construction, Jadico con-

tinued to occupy and engage in its business activities within the interior of the warehouse building owned by Dickerson. However, there is no evidence and the record is devoid of any suggestion that Jadico or Dickerson performed any of their customary business activities on the roof of the warehouse.

■ Defendants' argument misses the mark. The law concerning landowner liability is that the duty of due care shifts to the independent contractor during the period of construction if the landowner relinquishes possession and control of the *premises* to the independent contractor, not the *specific instrumentality*. *See Wilson v. River Market Venture, I, L.P.*, 996 S.W.2d 687, 695 (Mo.App. W.D.1999) (it was error to instruct as to the possession and control of the specific instrumentality instead of possession and control of the premises, although jury not misled or confused by the submission). Neither Dickerson nor Jadico can escape liability based on the proposition that both of them may have released the possession and control of the roof to BBI.

There is an additional problem with Dickerson and Jadico claiming that each released the possession and control of the premises; because of the lease, one of them did not have the right to possession and control of the premises and thus could not have released it. The injury did not occur on the property that may have been released by the construction contract; the injury occurred on the property that Jadico leased from Dickerson. The lease provided that Jadico had the right to "peaceably and quietly have, hold, and enjoy the Premises ... without any manner of hindrance or molestation from [Dickerson] or anyone claiming under [Dickerson]"; however, Dickerson retained the right to enter the premises "to make such alterations or repairs ... as may be necessary" for safe-

ty. Dickerson also retained the right to consent to all alterations to the property, which would then become the property of Dickerson, and agreed to make any "alterations ... reasonably requested by [Jadico]." There well may be an issue at the time of trial as to which entity had the right to relinquish the possession and control to BBI.

Defendants' claim, which equates the possible relinquishment of the possession and control of the roof by Defendants on the day of the injury to relinquishment of possession and control of the premises, does not support a grant of summary judgment. The judgment is, therefore, reversed and the cause is remanded for further proceedings consistent with this opinion.

GARRISON, P.J., and PREWITT, J., concur.